Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2003 | **DATE** | 9/25/2000 |
| **CASE TITLE** | PAUL WINDHAM vs. MIKE SEVERNS, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion for summary judgment [8-1] is granted. Judgment is entered for defendants Central Die Casting and Manufacturing Co., Mike Severns and Andy Olsen and against plaintiff Paul Windham. Defendant Michael Skelanic is dismissed from this action. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | SEP 28 2000 | |
| | Notified counsel by telephone. | | date docketed | 13 |
| | Docketing to mail notices. | | *KB* | |
| | Mail AO 450 form. | FD-7 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 9/25/2000 | |
| SB | courtroom deputy's initials | 00 SEP 27 PM 5:09 | date mailed notice | |
| | | | jad | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL WINDHAM, )
)
Plaintiff, ) No. 00 C 2003
)
v. ) Suzanne B. Conlon, Judge
)
MIKE SEVERNS, ANDY OLSEN, MIKE )
SKELANIC, and CENTRAL DIE CASTING & )
MFG. CO., INC., )
)
Defendants. )

**DOCKETED**

**SEP 2 8 2000**

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Paul Windham sues Mike Severns, Andy Olsen, Michael Skowronek and Central Die Casting & Mfg. Co., Inc. ("Central Die") (collectively "defendants") for terminating him due to his age in violation of the Age Discrimination in Employment Act ("ADEA") and due to his race and national origin, in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. Severns, Olsen and Central Die move for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## BACKGROUND

The facts are taken primarily from defendants' 56.1(a) Statement of Material Facts. Windham has failed to submit a 56.1(b) statement in response to defendants' 56.1(a) statement. Defendants complied with the Seventh Circuit's requirement that *pro se* litigants receive a plain-English notice that explains the consequences of failing to comply with Rule 56.1. Timms v. Franks, 953 F.2d 281, 285 (7th Cir. 1992). Because Windham proceeds *pro se,* the court considers Windham's factual assertions that are supported by evidence.



I       **The parties**

Paul Windham is a 47-year-old African-American. He worked as a machine operator for Central Die for a total of 44 days, from July 12 through August 28, 1999. Windham was 46 years old when he was hired and terminated by Central Die.

Central Die produces molds and metal parts for the automobile and other industries. Skowronek served as Central Die's Vice President of Administration during Windham's employment. Olsen was Windham's direct supervisor. Severns was Windham's second-level supervisor on the floor.

II      **Windham's employment at Central Die**

Windham was hired by Skowronek and Severns on July 12, 1999, as a machine operator. Windham was required to take a math test prior to being hired. Windham was informed when he was hired that he was subject to a 60-day probationary period. Eight other employees were hired at the same time as Windham. These employees included five Hispanic males, two Caucasian males, and one other African-American male. All of these individuals were required to take a math test.

Windham was hired to work the night shift. His job consisted of running parts in a machine that produced aluminum castings, pulling the parts out, and checking them. Windham had performance problems. Olsen frequently spoke to Windham about his failure to "blow out" chips from what should have been finished parts ready for shipment. Olsen informed Windham that quality was more important than quantity. In addition, Windham reached into an active machine in order to change a part, a violation of safety rules and procedure. Other employees did not have the same performance problems.

2

On August 27, 1999, Windham allegedly produced poor quality parts on his shift; Windham denies this allegation.[1] Severns told Windham that the parts had a shallow tap and the parts were not functional. An entire shift's worth of defective parts were produced. A machine operator is required to use a gauge once an hour to ensure parts meet specifications. Use of the gauge would have alerted Windham that the parts he was producing were defective. These parts were in great demand. Central Die was past due on the parts and working around the clock to produce them. The parts were delivered as soon as they were produced. Thus, Windham's defective parts took on added significance. Central Die had to have another operator re-work the defective parts over a period of days.

On August 28, 1999, Windham was terminated for poor performance. Severns informed Windham of the termination decision. Skowronek approved the decision.

### III  Windham's Equal Employment Opportunity Commission charge

On September 21, 1999, Windham filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The charge was based solely on alleged race discrimination. The EEOC dismissed the charge. On April 3, 2000, Windham timely filed this suit alleging race discrimination, but also added age and national origin discrimination claims.

## DISCUSSION

### I  Summary judgment standard

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a

---

[1] Central Die proffers evidence that 172 defective parts were produced. Skowronek Aff., ¶ 9. Windham responds that he made no more than 70 parts that night. Pl. Resp., p. 3. It is unnecessary to resolve this dispute for purposes of this motion.

3

matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the record and draw all reasonable inferences in the light most favorable to the nonmoving party. Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 291 (7th Cir. 1998). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P.56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). However, "there is no separate rule of civil procedure in employment cases;" rather, the added rigor language means only that "courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable." Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit will preclude an entry of judgment for the moving party. Thomas & Betts, 138 F.3d at 291.

The court recognizes that Windham proceeds *pro se* and thus follows the "well-known admonition that district courts must construe *pro se* pleadings liberally." Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998). This means that Windham will be given a break when, although he

4

stumbles on a technicality, his motion is understandable. Id. This does not alter the evaluation of the substantive merits of Windham's case. Philipper v. Dorn, 1999 WL 558123 at *6 (N.D.Ill. 1999).

**II    Skowronek**

Defendants state that Skowronek was not served with process within 120 days of the filing of the complaint. Windham does not dispute this assertion. Pursuant to Fed. R. Civ. P. 4(m), Skowronek is dismissed from this action.

**III    ADEA and Title VII claims against Severns and Olsen**

Windham sues Olsen and Severns in their individual capacities pursuant to both the ADEA and Title VII, asserting both race and national origin discrimination. These claims must be dismissed. There is no individual liability under either the ADEA or Title VII. EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279-80 (7th Cir. 1995); Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995).

**IV    ADEA and Title VII national origin claims against Central Die**

In his EEOC charge, Windham alleged only race discrimination. Windham checked the box for "race," but did not check the boxes for national origin or age discrimination. The full text of the charge read:

    I.    I began my employment with [Central Die] on July 12, 1999 as a Machine Operator. Prior to my hire date, I was required to take a math test that Hispanics are not required to take. I was paid less than less qualified, less experienced non-Blacks. I was discharged on August 28, 1999.

    II.    I was told that I was discharged because I made some bad parts.

    III.    I believe I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that the alleged bad parts could not be produced for me.

Def. Br., Ex. C.

Under the "scope of the charge" doctrine, claims of discrimination in a civil action are cognizable only if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." Noreuil v. Peabody Coal Co., 96 F.3d 254, 258 (7th Cir. 1996); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). This requirement applies to claims under the ADEA and Title VII. Noreuil, 96 F.3d at 258 (ADEA); Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985) (Title VII).

Windham's claims of age discrimination and national origin discrimination are not "reasonably related" to the race discrimination claim in his EEOC charge. The EEOC charge does not contain any reference whatsoever to age,[2] let alone any facts or allegations. The failure to include any mention of age in an EEOC charge is fatal. Moore v. Cook County Hospital Civ. Service Comm'n, 1997 WL 529550 at *2 (N.D.Ill. 1997). Windham's charge of age discrimination must be dismissed.

Nor is Windham's claim of national origin discrimination reasonably related to his charge of race discrimination. The EEOC charge does not mention that Windham's national origin is American. Def. Br., Ex. C; Windham Dep., p. 9. Further, nothing in the EEOC charge suggests that Windham was discriminated against because he is American. The EEOC charge clearly states that Windham believed he was discriminated against because of his race, not his national origin. Nor is it reasonable to infer that Windham alleged a national origin discrimination claim just because he alleged a race discrimination claim. See, e.g. Abinion v. Wieboldt Stores, Inc., 1985 WL 1476 at *3 (N.D.Ill. 1985) (EEOC charge of national origin discrimination not reasonably related to claim of race discrimination); Mathura v. Council for Human Serv. Home Care Serv., Inc., 1996 WL 157496 at

---

[2] The charge fails to note Windham's age in the appropriate box.

*2 (S.D.N.Y. 1996) (EEOC charge of race/color discrimination not reasonably related to claim of national origin discrimination). Therefore, Windham's charge of national origin discrimination under Title VII must be dismissed.[3]

## V  § 1981 and Title VII race discrimination claims

Remaining are the § 1981 claims of race and national origin discrimination against all defendants except Skowronek, and the Title VII race discrimination claim against Central Die. Defendants argue that summary judgment is appropriate against Windham on these claims.

### A  Legal framework

The analytical framework for Windham's § 1981 and Title VII claims is identical. Vakharia v. Swedish Covenant Hosp., 190 F.3d 799, 806 (7th Cir. 1999). Windham may prove employment discrimination by showing direct or indirect evidence of discrimination. Id. Direct evidence is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." Council 31, Am. Fed. of State, County and Municipal Employees v. Doherty, 169 F.3d 1068, 1072 (7th Cir. 1999). Windham has offered no evidence of direct discrimination. Therefore, he must rely on indirect evidence, and this court applies the burden-shifting method established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a *prima facie* case of employment discrimination, Windham must present evidence that: (1) he was a member of a protected class; (2) he met Central Die's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) Central Die treated

---

[3] In reaching the conclusion to dismiss the ADEA and Title VII national origin claims, this court does not rely on Windham's failure to mark the boxes for "age" and "national origin" on his EEOC charge, as this is not dispositive. Jenkins v. Blue Cross Mutual Hospital Ins., Inc., 538 F.2d 164, 168 (7th Cir. 1976).

similarly situated persons outside the protected class more favorably. <u>Vakharia</u>, 190 F.3d at 806. If Windham establishes a *prima facie* case, there is a presumption of discrimination that obliges Central Die to produce a legitimate, nondiscriminatory reason for its decision. <u>Id.</u> If Central Die does so, the burden shifts back to Windham to offer evidence that Central Die's proffered reason is pretextual. <u>Id.</u> Windham bears the ultimate burden of demonstrating an impermissible motive or intent. <u>Id.</u>

**B      *Prima facie* case**

Windham, an African-American, satisfies the first prong of the <u>McDonnell Douglas</u> test. Central Die denies that Windham met its legitimate performance expectations. Central Die is correct. Windham asserts he "was meeting [Central Die's] legitimate performance expectations." Pl. Resp., p. 7. However, Windham's only "fact" supporting this assertion is the statement, "If I wasn't [meeting Central Die's expectations], why wasn't I given something in writing stating that I wasn't before my termination." <u>Id.</u> This statement falls well short of Windham's burden under this prong of the <u>McDonnell Douglas</u> test. Windham must produce evidence to show he met Central Die's legitimate expectations, not simply provide a self-serving statement that he did so. <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 363 (7th Cir. 1998). More importantly, Central Die has offered evidence that: (1) Windham's direct supervisor criticized him for changing inserts too often [Windham Dep., p. 105]; (2) Windham's direct supervisor criticized him for failing to spray out metal chips on the parts before packaging [Windham Dep, p. 177]; (3) Windham reached into an active machine to change an insert, a violation of safety procedures [Olsen Aff., ¶ 5]; and (4) Windham had a shift that produced defective parts [Olsen Aff., ¶ 8]. Windham has failed to rebut this evidence. In sum,

Windham has failed to meet his burden of producing evidence that he met Central Die's legitimate performance expectations.

Even if Windham met the second prong of the McDonnell Douglas test, he has failed to satisfy the fourth prong of the test. Windham's only response is that Central Die was unable to produce the alleged defective parts he produced. Pl. Resp., p.3. This assertion does not address whether Windham was treated similarly with other employees. Windham does not produce evidence that other employees produced defective parts and were shown the defective parts, or that other employees produced defective parts and were not disciplined. In order to meet this prong of the McDonnell Douglas test, Windham "must show that he is similarly situated with respect to performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. July 7, 2000). "This normally entails a showing that the [ ] employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. Windham has failed to produce evidence that any other employee had similar quality problems but were not disciplined. Windham has not met his burden under the fourth prong of the McDonnell Douglas test.

Windham does produce evidence that several employees hired during the relevant period were paid a slightly higher wage, $7.65 per hour, than his hourly starting wage of $7.55. Pl. Resp., Ex. 3 and 6. Windham has failed, however, to produce evidence that he was similarly situated with workers who received the $7.65 wage. Further, even if Windham produced evidence that he was similarly situated with those workers who made $7.65 an hour, this fact alone falls far short of Windham's burden of producing sufficient evidence to support a reasonable inference of

9

discrimination. There were three other workers who also started at $7.55 per hour, and these individuals were all Hispanic.

**C      Pretext**

Even if Windham met the McDonnell Douglas test, he has failed to demonstrate that Central Die's proffered explanation for his termination, poor performance, was a pretext. In demonstrating pretext, Windham "must show more than that the employer's decision was incorrect; [Windham] must also show the employer lied about its proffered explanation." Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998). "Even an employer's erroneous decisionmaking, exhibiting poor business judgment, is not sufficient to establish pretext." Id.

Windham fails to produce evidence that Central Die's explanation for his termination was pretextual. There is absolutely no evidence to indicate Central Die has lied about its determination that Windham was not performing his job duties properly. Moreover, Windham admits he was cautioned for failure to spray out chips [Windham Dep., p. 177], changing inserts too often [Id. at 104], and reaching into an active machine to change an insert [Olsen Aff., ¶5]. There is no evidence that these indications of poor performance, supported by affidavits and depositions, were pretextual. "When an employer articulates more than one reason for an employee's discharge, the employee must raise an inference of fact regarding the honesty and credibility of each reason." Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998). Windham fails to meet this burden.

It is not appropriate to consider whether Central Die's proffered reasons for Windham's termination were adequate. "Title VII does not prohibit employers from making employment decisions based on that which an employee considers to be a de minimis infraction." Foster v. Arthur

Andersen, LP, 168 F.3d 1029, 1035 (7th Cir. 1999). This court does "not sit as a super-personnel department that reexamines an employer's personnel decisions". Id.

Windham's failure to raise an inference of discrimination is even more stark in light of the fact that he was hired and terminated by the same two individuals, Severns and Skowronek. There is a strong presumption of nondiscrimination when the same individuals hire and terminate the individual suing for discrimination. EEOC v. Our Lady of the Resurrection Med. Center, 77 F.3d 145, 152 (7th Cir. 1996). If Severns and Skowronek wanted to discriminate against Windham due to his race, they could have refused to hire him in the first place. This is a strong factor weighing against a finding of discrimination.

Because Windham fails to meet the second and fourth prongs of the McDonnell Douglas test, and fails to demonstrate pretext, summary judgment is granted on the § 1981 claims of race and national origin discrimination against all defendants and his Title VII race discrimination claim against Central Die.

## CONCLUSION

Defendant Michael Skowronek is dismissed from this action. The Title VII and ADEA claims against defendants Mike Severns and Andy Olsen are dismissed. The ADEA and Title VII national origin claims against defendant Central Die Casting are dismissed. Summary judgment is granted with respect to the remaining § 1981 claims of race and national origin discrimination against all defendants and the Title VII claim of race discrimination against Central Die Casting.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

September 25, 2000